**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

RESTORE ROBOTICS REPAIR LLC,

                     Plaintiff,

    v.

INTUITIVE SURGICAL, INC.,

                     Defendant.

Civil Case No. 3:24-cv-444-MCR-ZCB

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS
DISPOSITIVE MOTION TO DISMISS AMENDED COMPLAINT FOR
<u>FAILURE TO STATE A CLAIM</u>**

**I.    RESTORE'S CLAIMS ARE TIME-BARRED.**

Restore's Amended Complaint challenges the same contract terms Restore sued over in 2019, as to a business (X/Xi EndoWrists) from which Restore says it was excluded by no later than July 2020 due to those contracts. ECF No. 21, ¶ 88. Restore did not file this lawsuit until September 2024, more than four years later. Its claims are time-barred.

Restore argues it was precluded in the prior litigation from presenting evidence of "damages to its X/Xi business" because it lacked "the technological capability to get into the X/Xi EndoWrist business." ECF No. 27 ("Opp.") at 5–6. But the *in limine* ruling Restore cites has no bearing on whether its current X/Xi claims are timely. Judge Wetherell precluded Restore from putting evidence about

1

hypothetical X/Xi damages before the jury. *Restore Robotics, LLC* v. *Intuitive Surgical, Inc.*, 5:19-cv-555 (N.D. Fla.), ECF No. 218 at 3. He did not decide whether such claims had accrued by July 2020 or earlier—the issue here.

Restore next insists that its injury did not accrue until February 29, 2024, because before then it was unable to "prove with requisite certainty the existence and amount of damages to its business . . . going back to June 2020." Opp. 5–6. This is self-defeating. The statute of limitations began running as soon as Restore suffered injury. *Morton's Mkt., Inc.* v. *Gustafson's Dairy, Inc.*, 198 F.3d 823, 827 (11th Cir. 1999). And Restore claims it was injured "going back to June of 2020." Where a plaintiff has been injured, the statute of limitations begins to run even if there is "difficulty in ascertaining the scope or extent of injury." *Pace Indus., Inc.* v. *Three Phoenix Co.*, 813 F.2d 234, 240 (9th Cir. 1987). Restore continues to ignore the distinction between the plaintiff ignorant of the fact of its injury and the plaintiff aware of its injury but not the quantum of damages. *Id.*; *see also Winnemucca Indian Colony* v. *United States*, 167 Fed. Cl. 396, 416 (Fed. Ct. Cl. 2023) (where plaintiff has been injured and "simply is uncertain of the quantum of damages . . . the statute of limitations has begun to run"). Restore concedes it knew of its alleged exclusion from X/Xi EndoWrists by July 2020, when it says it would have entered the X/Xi business but-for Intuitive's conduct. ECF No. 21 ¶ 88. The deposition testimony Restore cited in its Opposition to Intuitive's Motion for Leave to File a Reply, ECF

2

No. 31 at 3, further confirms this: Restore believed it suffered "harm to [its] business" because Intuitive's conduct allegedly deprived it of revenue to fund its X/Xi business. Because that alleged harm occurred more than four years before Restore filed its complaint, Restore has pled itself out of court.

Finally, the "continuing violation doctrine" has no application here. An antitrust claim directed at contract terms accrues when the terms are introduced, not each time they are repeated. ECF No. 30 at 2–3; *SaurikIT, LLC* v. *Apple, Inc.*, 2023 WL 8946200, at *1 (9th Cir. Dec. 28, 2023). Restore relies on *Morton's Market*, 198 F.3d at 828, but that case involved a horizontal price-fixing conspiracy in which customers were injured by overcharges each time they purchased. Restore is not a customer, but an alleged competitor. It is not challenging price-fixing, but Intuitive's unilaterally-determined policies. It is not suing for overcharges, but for alleged exclusion. Its injury thus accrued no later than June/July 2020, when Restore alleges it lost X/Xi sales due to Intuitive's policies, ECF No. 21 ¶¶ 88, 91, and its claims are time-barred.

## II. RESTORE FAILS TO PLEAD UNLAWFUL TYING OR EXCLUSIVE DEALING.

Restore does not dispute the controlling law that when, as here, a defendant's contracts allow for the purchase of a product from either defendant or third parties approved by defendant, there is no unlawful tying or exclusive dealing unless

3

plaintiff can show that approval was a sham or "illusory." ECF No. 25 at 17–18; Opp. 9. Restore has not pled illusoriness.

Restore asserts that Judge Wetherell previously ruled that "coercion and exclusive dealing can plausibly be inferred from the restrictions requiring approval from Intuitive." Opp. 7–8. But neither the issue of Intuitive granting third-party approval nor the law on "illusoriness" was presented to Judge Wetherell; he therefore did not rule on these issues.

Next, Restore asserts that the challenged terms of Intuitive's contracts are "unqualified," Opp. 9, but Restore omits key language from the referenced contract provisions, which addresses actions "without Intuitive's express written permission." ECF No. 17 at 5. Intuitive's contracts make clear that repair and servicing of EndoWrists may be done by third parties who obtain Intuitive's authorization. *Id.* at 6. Restore's self-serving assertions contradicting the contracts' plain text cannot change their meaning. *Galindo* v. *ARI Mut. Ins. Co.*, 203 F.3d 771, 774–76 (11th Cir. 2000).

Restore also argues it alleged illusoriness by a "course of dealing . . . that Intuitive would not permit customers to use the instruments for a second cycle of uses." Opp. 9–10. But Restore does *not* allege that Intuitive ever refused to grant third-party authorization or enforced its contracts against authorized third parties. Restore simply claims that Intuitive adhered to a policy of not supporting

4

*unauthorized* third-party services. That in no way establishes that authorization was illusory.

Restore further asserts it can demonstrate illusoriness "by showing Intuitive had never approved anyone." Opp. 10. First, that is false: Restore's allegations show that Intuitive approved Restore for S/Si EndoWrists with FDA clearance, and granted blanket approval for third parties who remanufacture EndoWrists with FDA clearance. ECF No. 21 at ¶¶ 63, 85. Even if (contrary to these admitted facts) Intuitive had never approved anyone, that would not establish illusoriness. *Photovest Corp.* v. *Fotomat Corp.*, 606 F.2d 704, 722 (7th Cir. 1979). "When approvals are practicable in principle, the defendant still cannot be faulted for the mere absence of numerous (or even any) such approvals. Customers or rivals may not have sought approvals, or no rival product may be good enough." Areeda & Hovenkamp, *Antitrust Law* ¶ 1716e2 (2024). Restore makes no allegation that any third party ever sought approval and was denied, or that it was not "practicable in principle" to gain approval—including by seeking and obtaining FDA clearance, as Restore did. This is fatal to its claims. *See Photovest*, 606 F.2d at 722 (rejecting tying claim because "Photovest never submitted a processor to Fotomat for approval").

Finally, Restore complains that "Intuitive has not revised its Agreement or User Manual" to conform to the blanket permission for FDA-approved third-party

5

remanufacturers on its website. Opp. 11. That misses the point. The contracts require approval. The website gave approval. There is no inconsistency that would require the contracts to be modified.

## III. RESTORE FAILS TO ALLEGE ANTITRUST INJURY.

Restore developed its alleged capability to compete as to S/Si EndoWrists while Intuitive's contracts—containing the same terms challenged here—remained in force and unchanged. Restore therefore cannot plausibly allege that the same contracts excluded Restore from the alleged X/Xi market. ECF No. 25 at 25–28. Restore argues "futility." Opp. 11–13. But if it was not "futile" for Restore to invest in S/Si in 2019, or in X/Xi after 2023, why was it "futile" for Restore to make such investments in 2020? The end of the "futility" cannot have been Intuitive's 2023 website statement, since Restore describes that as "somewhat bogus." Opp. 11.[1] Moreover, Restore has now received FDA clearance for an X/Xi EndoWrist[2] despite claiming that Intuitive is engaged in all the same conduct as in 2019. Restore has no plausible explanation for how Intuitive prevented it from making the necessary

---

[1] As noted, Restore has pled no facts to show the website statement was "bogus." Regardless, Restore cannot have it both ways. Either the website was not "bogus," and thus approval was not "illusory," or Restore had just as much incentive to invest in X/Xi before and after the website statement, and thus is responsible for its own alleged injury.

[2] U.S. FDA, 510(k) K242610 Premarket Notification, https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpmn/pmn.cfm?ID=K242610

investments to enter the alleged market, and therefore has not alleged causation of antitrust injury.

### IV. RESTORE FAILS TO ALLEGE A SINGLE-BRAND AFTERMARKET.

Restore fails to allege the elements necessary to establish a single-brand aftermarket. ECF No. 25 at 29–33. In particular, Restore failed to allege the first element identified in *Epic Games, Inc.* v. *Apple, Inc.*, 67 F.4th 946, 977 (9th Cir. 2023), which is consistent with Eleventh Circuit precedent—*i.e.*, that Intuitive changed its policy after hospitals purchased da Vinci systems or that hospitals were unaware of the challenged policies when they made their da Vinci purchases. ECF No. 25 at 33. This is fatal to a single-brand aftermarket. *Id.* at 32–33 (citing cases).

Instead, Restore relies entirely on Judge Wetherell's allowance for a single-brand aftermarket in 2019. Opp. 15–17. But Judge Wetherell ruled on a different complaint, with different allegations, without the benefit of *Epic*. Restore references the trial transcript from the recent SIS trial, Opp. 18, but fails to mention that the court granted a directed verdict for Intuitive because SIS could not prove the *Epic* factors to establish a single-brand aftermarket. *SIS*, ECF No. 445.

Finally, Restore asserts "it is plausible that Intuitive has market power in a broader aftermarket for surgical robot instruments generally." Opp. 16. But Restore has not alleged a market for "surgical robot instruments generally." Intuitive raised the single-brand aftermarket issue in its Motion to Dismiss Restore's original

complaint. ECF No. 16 at 29–33. Restore chose not to try to cure this defect in its Amended Complaint, and has not alleged facts showing that an alternative market definition would be plausible.

## V. THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.

Intuitive's Motion to Dismiss the original complaint raised every ground on which Intuitive now moves to dismiss the Amended Complaint. Despite notice of these legal defects, Restore chose not to cure them in the Amended Complaint because Restore cannot cure them.

Restore instead claims it is still "discover[ing] facts from related litigation," citing to the SIS trial transcript. Opp. 18. Restore does not say how it might amend its complaint again based on the SIS litigation. And Restore fails to mention that the SIS trial resulted in a directed verdict in Intuitive's favor because SIS failed to prove a single-brand aftermarket, just as Restore fails to allege one here.

Further, the one out-of-context snippet Restore cites from the SIS trial (which was never presented to the jury) does *not* establish that authorization was illusory.[3] To the contrary, the witness testified that Intuitive had a well-developed system for

---

[3] The testimony cited refers to a policy for "cleared instruments." Opp. 18. Before the fall of 2022, there were no FDA-cleared remanufactured EndoWrists. Once there were, Intuitive stated on its website how such instruments would be treated under its contracts. This demonstrates the opposite of illusoriness.

third-party approvals and had authorized dozens of third-party products for use with da Vinci. *SIS*, ECF No. 463, at 1841–47 (January 22, 2025).

Restore has informed Intuitive that it plans to file a motion for leave to amend, adding allegations about the X/Xi-instrument 510(k) clearance Restore recently obtained from the FDA. That development further confirms why dismissal with prejudice is the right result. Intuitive will respond separately to any motion for leave to explain why further amendment would be futile, but in brief: Intuitive's policies did not prevent Restore from obtaining FDA clearance for an X/Xi EndoWrist; customers are free to buy FDA-cleared instruments from third-party remanufacturers, including Restore, without breaching their contracts, as Intuitive has stated publicly; thus, Restore has not been blocked from competing by Intuitive's policies.

## **CONCLUSION**

Restore's Amended Complaint should be dismissed with prejudice.

Dated March 26, 2025

Respectfully submitted,

/s/ *William B. Michael*
William B. Michael (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
T: 212-373-3000
E: wmichael@paulweiss.com

Kenneth A. Gallo (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
T: 202-223-7300
E: kgallo@paulweiss.com

Andrew Lazerow (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001
T: 202-662-6000
E: alazerow@cov.com

Bruce D. Partington
CLARK PARTINGTON
125 East Intendencia Street, 4th Floor
Pensacola, Florida 32502
T: (850) 432-1399
E: bpartington@clarkpartington.com

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Intuitive certifies that its Reply Memorandum in Support of Its Dispositive Motion to Dismiss Amended Complaint for Failure to State a Claim complies with the word count limitation set forth in Local Rule 7.1(F) and in this Court's order, ECF No. 32, because it contains 1,960 words, excluding the parts exempted by the Local Rule.

/s/ *William B. Michael*