IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RESTORE ROBOTICS REPAIRS LLC,

                Plaintiff,

    v.                                     Case No. 3:24-cv-444-MCR-ZCB

INTUITIVE SURGICAL, INC.,

                Defendant.

## PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT WITH SUPPORTING MEMORANDUM

Jeffrey L. Berhold
JEFFREY L. BERHOLD, P.C.
1230 Peachtree Street, Suite 1050
Atlanta, Georgia 30309

Pursuant to Fed. R. Civ. Proc. 15(a)(2), Plaintiff Restore Robotics Repairs LLC ("Restore") hereby moves for leave to amend its complaint alleging antitrust claims for injury to its business of repairing and remanufacturing X/Xi EndoWrists. Pursuant to N.D. Fla. Loc. R. 15.1(B), Restore is simultaneously filing the proposed amended pleading itself at ECF No. 35 ("Second Amended Complaint" or "SAC").

The complaint has always alleged that Intuitive has a 99% share in annual sales and installed base in the U.S. Surgical Robot Market and uses its monopoly power in the robot market and the robot service and instrument replacement aftermarkets to restrain and monopolize trade in the repair and replacement of X/Xi EndoWrists for use with its surgical robot. ECF No. 1 at 1-3 (summarizing allegations). The proposed amended complaint alleges additional facts occurring after the filing of the First Amended Complaint on December 27, 2024.

This Court retains "broad discretion to grant leave to amend and 'should freely give leave when justice so requires.'" In Re 3M Combat Arms Earplug Prods. Liab. Litig., No. 3:19MD2885, 2021 WL 8533256, at *3 (N.D. Fla. Oct. 8, 2021) (Rodgers, J.) (quoting Fed. R. Civ. P. 15(a)(2)). Under this standard, leave to amend will be granted absent a finding of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962);

*see also* In Re 3M, 2021 WL 8533256, at *3.

## AMENDMENTS

Here, Restore seeks to amend its complaint to allege additional facts occurring

after the filing of its First Amended Complaint. Specifically, Restore received

clearance from the FDA to market and sell remanufactured X/Xi EndoWrists on

March 11, 2025. SAC ¶ 95.

At that time, Restore started to market its remanufactured X/Xi EndoWrists

to customers who continued to be restrained by the terms of Intuitive's Sales,

License, and Service Agreement ("Agreement") that Intuitive requires with each

new purchase of its surgical robots. Id. ¶¶ 69-72. "Customers have indicated that

they need written notice from Intuitive that the EndoWrists are not subject to a

limited license based on the number of uses under their Agreements with Intuitive

and that Intuitive approves Restore Robotics to remanufacture EndoWrists." Id. ¶

69.

The amendment alleges specific examples of such conversations with

hospitals, which support the core allegation that the contracts at issue – Intuitive's

Agreements – continue to restrain trade and harm competition in the repair and

replacement of the X/Xi EndoWrists specifically and surgical robot instruments

generally and injure the business of Restore in repairing and remanufacturing X/Xi EndoWrists. ¶¶ 70-71.

The amendment further alleges that Restore notified Intuitive in writing on March 23, 2025 that Intuitive's Agreements are continuing to restrain trade in the market. SAC ¶ 71. The letter asks that:

> (a) Intuitive revise its User Manual and amend its Agreements with customers to state that its instruments are not subject to a limited license based on the number of uses, (b) Intuitive notify customers in writing that Intuitive approves Restore Robotics to remanufacture any EndoWrist that falls under the scope of any 510(k) clearance from the FDA, and (c) Intuitive provide Restore with a letter signed by Mr. Rosa that "simply states that Intuitive approves Restore Robotics to remanufacture and sell EndoWrists in compliance with a 510(k) clearance."

Id. The amendment also sets out the response from Intuitive indirectly in an updated website statement and directly by letter. Id. ¶ 72.

The proposed complaint also expands on the language in the First Amendment Complaint ("FAC") putting Intuitive on *further* notice how the complaint plausibly alleges facts that Intuitive would still be liable under its broader definition of the product market that includes all surgical robot instruments:

> While the complaint defines a da Vinci Service Market and an X/Xi EndoWrist Market, the claims in this action also apply to a surgical robot service aftermarket and a surgical robot instrument aftermarket. Even if the aftermarkets were more broadly defined to include all brands of surgical robots, *i.e.*, Intuitive and Asensus, Intuitive has market shares of 99.9% for surgical robot service and surgical robot instruments with the same barriers to entry into the

3

> aftermarkets and the same ability to charge inflated prices and exclude
> competition in the aftermarkets described below at ¶¶ 31-94.

SAC ¶ 30 n.1. The complaint adds language to each count so that there is no misunderstanding that Restore maintains the claims for an X/Xi EndoWrist Market, or a surgical robot instrument market in the alternative.[1] Id. ¶¶ 101, 104, 107, 110.

Restore requested written consent from Intuitive under Rule 15(a)(2) and provided a copy of the proposed amendment to Intuitive at its request. Shortly after receiving the proposed amended complaint on March 24, 2025, Intuitive said that it would "oppose a motion for leave to amend, principally on the ground that further amendment would be futile." Restore has since updated the amendment with events occurring after March 24 and provided the amendment to Intuitive. Intuitive maintains its position on the motion.

## THE AMENDMENTS ARE NOT FUTILE

In its opposition to the motion to dismiss the FAC, Restore already set forth all the reasons why the claims here survive a motion to dismiss. (ECF No. 27.) The

---

[1] Judge Wetherell previously ruled that such language was not necessary in the S/Si EndoWrist Litigation. *Restore Robotics, LLC v. Intuitive Surgical, Inc.*, No. 5:19CV55-TKW-MJF, 2019 WL 8063989, at *6 (N.D. Fla. Sept. 16, 2019). Judge Wetherell explained that there is essentially no practical difference between defining the aftermarket as EndoWrists specifically or robotic instruments generally because Intuitive necessarily has such a large market share in a broader aftermarket for surgical robot instruments. *Id.* Nevertheless, Intuitive has argued that the claims here must necessarily fail if there is no single-brand aftermarket for X/Xi EndoWrists. ECF No. 25 at 33.

motion to dismiss raises questions of fact: (1) has Intuitive engaged in "continuing antitrust behavior" during the limitations period by continuing to require the Agreement with the sale of the robot and continuing to enforce the Limited License during the limitations period, (2) is the purported "approval" clause "somewhat bogus" because Intuitive admits that it had no policy regarding the authorization of third parties to remanufacture EndoWrists for an additional cycle of uses before March 2023 and continued to sell the robot with the limited license prohibiting a second cycle of uses after March 2023, (3) was Restore able and willing to enter the X/Xi EndoWrist market if Intuitive had not blocked Restore from repairing any EndoWrists before the settlement of the S/Si EndoWrist Litigation, (4) did and does Intuitive prevent competition in X/Xi EndoWrists by preventing customers from using their EndoWrists for a second cycle of uses, and (5) is it plausible that Intuitive has market power and monopoly power in X/Xi EndoWrists specifically or surgical robotic instruments generally with a durable market share of 99.9% and high barriers to entry.

**1. Intuitive Has Monopoly Power.**

The FAC more than plausibly alleges that Intuitive uses its dominant position in robots (99% market share in the surgical robot market) to exercise market power in the aftermarket for X/Xi EndoWrists. *See Restore Robotics, LLC v. Intuitive Surgical, Inc.*, No. 5:19CV55-TKW-MJF, 2019 WL 8063989, at *5-6 (N.D. Fla.

Sept. 16, 2019) ("S/Si EndoWrist Litigation") (quoting *Spectrofuge Corp. v.*
*Beckman Instruments, Inc.*, 575 F.2d 256, 282 (5th Cir. 1978) and citing *Eastman*
*Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 479 n.29 (1992)). There is no need
to show anything else because competition in the foremarket cannot discipline
competition in single-brand aftermarkets if the defendant has market power in the
foremarket in the first place:

> [T]he crux of the entire amended complaint is that the vertically
> integrated Defendant has used its monopoly power in the primary
> market of surgical robots to eliminate competition in the related
> aftermarkets. Moreover, as alleged, Defendant's products occupy a
> position unique and dominant enough in the markets to warrant one-
> brand market definition.

*Restore Robotics*, 2019 WL 8063989, at *6 (cleaned up); *see also Kodak*, 504 U.S.
at 455 (1992) (explaining that *Kodak*-style lock-in analysis of single-brand
aftermarket is premised on a "lack of market power in the primary equipment
market").

　　In any event, it is also plausible that Intuitive has monopoly power in a broader
market for surgical robot instruments. Monopoly power is the ability "to control
prices or exclude competition." *McWane, Inc. v. F.T.C.*, 783 F.3d 814, 830 (11th
Cir. 2015). Surgical robot instruments is a plausible market definition. Surgical robot
instruments have unique attributes and practical advantages. SAC ¶¶ 6-7. Surgical
robot instruments have all of the practical indicia of a distinct market: industry
recognition, peculiar characteristics and uses, unique production facilities, distinct

customers, distinct prices, sensitivity to price changes, and specialized vendors. *See McWane*, 783 F.3d at 828. Robotic surgery is considered unique. SAC ¶¶ 6, 22. The robots and their instruments are manufactured by specialized vendors. Id. ¶ 22. The instruments are specially designed for robotic surgery with wrist joints and scalability. Id. ¶ 7. They are only sold to hospitals with a robotic surgery practice. They cost roughly twice as much as laparoscopic instruments. Id. ¶ 20.

Within that broader market, Intuitive still has a market share of nearly 100%. Id. ¶ 41. There are significant barriers to entry – blocking patents from Intuitive, clearance requirements from the FDA, and encryption technology on the memory chips. Id. ¶¶ 47-53. In fact, there was no history of successful entry until Restore decrypted the X/Xi EndoWrists. Id. ¶ 46.

Restore also has direct evidence of monopoly power because Intuitive has the "ability to profitably raise prices substantially above the competitive level." *McWane*, 783 F.3d at 830. "Intuitive makes, rather than takes, prices on instruments. Intuitive has maintained the exact same list prices and adhered to them for every customer in the United States for several years at a time." SAC ¶ 41. Intuitive is able to unilaterally set usage limits on the instruments and charge inflated prices for them. Id.

## 2. Intuitive Continued to Engage in Antitrust Behavior.

In addition to alleging facts that plausibly give rise to antitrust violations, the complaint plainly alleges facts that Intuitive continued its monopolistic conduct well within the four years before the filing of the complaint.[2] Dismissal is not appropriate on the affirmative defense of the statute of limitations unless "the defense clearly appears on the face of the complaint." *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984). Furthermore, the statute of limitations "begins to run anew" with each sale under the continuing violation doctrine. *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 828 (11th Cir. 1999) (citing *Zenith*).

Restore brought its claims "based on continuing antitrust behavior, not merely the continuing damage it feels from a single day's monopoly and refusal to deal." *Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 517 F.2d 117, 125 (5th Cir. 1975) (applying continuing violations doctrine to competitor's monopolization claims). Contrary to the references in the motion to dismiss, the courts of other circuits also restart the limitations period with each action taken under a pre-limitations contract. *Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1203 (9th Cir. 2014).

---

[2] For purposes of the limitations period, it is "hornbook law" that a claim only accrues when the plaintiff can prove the fact of damage. *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 339 (1971); *Imperial Point Colonnades Condo., Inc. v. Mangurian*, 549 F.2d 1029, 1034 n.14 (5th Cir. 1977). Restore did not have a basis to assert a claim for injury to its X/Xi EndoWrist until Restore had the technical ability to reset the memory chip on the instruments. SAC ¶¶ 91-92.

In fact, Intuitive has conceded in other litigation that the sale of the robots with the Agreement restarts the statute of limitations. IN RE: DA VINCI SURGICAL ROBOT ANTITRUST LITIGATION, No. 21-CV-03825-AMO, 2025 WL 964879, at *11 (N.D. Cal. Mar. 31, 2025).[3] The complaint plainly alleges such facts here:

> Upon information and belief, Intuitive has placed more than 50% of the da Vinci installed base with the Agreement since September 19, 2020. Since September 19, 2020, Intuitive has continued to sell thousands of da Vinci X and Xi robots in the United States with the Agreement. Upon information and belief, Intuitive has also started to sell the da Vinci 5 in the United States with the Agreement.

SAC ¶ 55.

Moreover, the limited license plainly prevents customers from using EndoWrists for an additional cycle of uses. the Agreement provides the customer with a limited license for each instrument that "expires once an [i]nstrument is used up to its maximum number of uses." SAC ¶ 57. There is no qualification on the expiration of that license. Intuitive routinely enforced that limited license without qualification in its dealings with customers. Id. ¶¶ 60-70. Intuitive maintained that

---

[3] "Intuitive reasons that, because almost 550 hospitals signed contracts with Intuitive before May 21, 2017, predominance cannot be met because Hospital Plaintiffs have identified no class-wide proof of conduct after that date that would restart the statute of limitations period for those contracts.' Opp. at 3; see also id. at 18-19." Id.

position – that the usage limits were absolute and could not be reset without jeopardizing product quality and patient safety – in the S/Si EndoWrist Litigation.[4]

Finally, Intuitive has admitted in sworn testimony that it had no policy for authorizing third parties to repair or remanufacture EndoWrists. SAC ¶ 65; *see Tic-X-Press, Inc. v. Omni Promotions Co. of Georgia*, 815 F.2d 1407, 1417 (11th Cir. 1987). Since entering the surgical robot market more than two decades ago, Intuitive had never approved any ISO to service instruments for hospitals "[u]sing instruments beyond the programmed number of uses." SAC ¶ 63. Intuitive did not issue any written policy on the use of instruments for an additional cycle of uses until March 2023. Id. ¶ 63. It was only on March 27, 2025 that Intuitive "granted approval" to any ISO to remanufacture any EndoWrist. Id. ¶ 72.

### 3. Restore was Able and Willing to Enter the Market.

Intuitive already lost this exact same argument on antitrust injury – at summary judgment no less – in related litigation against a potential competitor Rebotix that had not achieved the technological capability to reset the usage limits on the X/Xi EndoWrists. *Rebotix Repair, LLC v. Intuitive Surgical, Inc.*, No. 8:20-CV-2274-VMC-TGW, 2022 WL 3272538, at *9–10 (M.D. Fla. Aug. 10, 2022). "Rebotix points out that it has not completed the X/Xi Interceptor because expending

---

[4] *E.g.*, S/Si EndoWrist Litigation, ECF No. 140 at 2, 11, 23 (Motion for Summary Judgment) and ECF No. 124 (Reply) at 16.

the resources to do so would be futile in light of Intuitive's ongoing anticompetitive conduct." Id. at *9. So has Restore: "Since Intuitive was blocking any and all access to customers indefinitely, the expenditure of substantial resources on achieving the technological capability to reset the usage count on the encrypted X/Xi EndoWrists would have been a clearly futile competitive gesture." SAC ¶ 87.

Moreover, "Rebotix point[ed] to the following affirmative steps it has taken: (1) Rebotix 'was and is operational' and 'it remains ready to repair EndoWrists'; and (2) it has already staffed a team for its business, spent millions of dollars on research and development, and obtained two patents on its method for resetting the usage counter." Id.

Here, Restore has done far more: (1) validating its repair process, (2) building a customer base, (3) obtaining the first ever clearance with the FDA, (4) lining up a large distributor, (5) retaining encryption specialists, (6) developing proprietary technology, (7) patenting its proprietary technology, (8) leasing a larger facility for the increased demand for the X/Xi EndoWrists, (9) acquiring an Xi robot for testing products, and (10) building out inventory of used X/Xi EndoWrists for remanufacturing. SAC ¶¶ 86, 88.

"Restore would have taken those steps to expand into X/Xi EndoWrists much more quickly if not for the anticompetitive conduct of Intuitive restricting customers from using instruments that had been reset for an additional cycle of uses." SAC ¶

11

88. In fact, "Restore had been counting on the revenues from the S/Si business to fund research, development, and ultimately production for the X/Xi business." Id. ¶ 87.

The Agreement – along with its enforcement – has prevented ISOs from entering the market for replacing X/Xi EndoWrists. For nearly a decade, no ISO was willing to undertake the costly and risky attempt to try to bypass or override the proprietary encryption on the memory chip installed on the X/Xi EndoWrists – until Intuitive agreed that it would not block ISOs from remanufacturing the instruments for an additional cycle of uses.

Contrary to the argument in the motion to dismiss, Intuitive had always aggressively enforced the limited license in its dealings with customers and litigation with ISOs. Complaint ¶¶ 61-63; S/Si EndoWrist Litigation, ECF No. 140 at 2, 11, 23 (Motion for Summary Judgment) and ECF No. 124 (Reply) at 16. It only made sense to take the final – and most expensive and risky steps – to decrypt the X/Xi memory chip and then seek clearance from the FDA after the settlement of the S/Si EndoWrist Litgation. It was only in the settlement in January 2023 that Intuitive agreed for the first time that it would not void the warranty or withhold service on a robot or refuse to sell a robot, instruments, or accessories if a customer used EndoWrists remanufactured by Restore under clearance from the FDA.

12

## <u>CONCLUSION</u>

In sum, Intuitive raises questions of fact in its motion to dismiss. Restore adequately alleges antitrust violations in an X/Xi EndoWrist aftermarket, or a broader robotic surgery instrument aftermarket, because Intuitive has a 99% market share with high barriers to entry under either definition of the relevant market. Intuitive uses that market power to secure and enforce agreements that prohibit customers from using the instruments for an additional cycle of uses. Furthermore, the agreements provide no exception to the limited license capping the number of uses. In any event, any approval clause was illusory: Intuitive lacked any policy for authorizing third parties *at least* until March 1, 2023. Furthermore, it remains a question of fact whether the clause in practice provides meaningful choice after the March 2023 announcement or the March 2025 announcement. Finally, Restore was able and willing to enter the market but for the anticompetitive conduct of Intuitive. Therefore, the motion to amend should be granted.

Respectfully submitted on April 7, 2025.

/s Jeff Berhold
Jeffrey L. Berhold*
Georgia Bar No. 054682
JEFFREY L. BERHOLD, P.C.
1230 Peachtree Street, Suite 1050
Atlanta, GA 30309
(404) 872-3800
jeff@berhold.com

**COUNSEL FOR PLAINTIFF**

\* Admitted Pro Hac Vice

Pursuant to Local Rule 5.1(F)(1)(a), a certificate of service is not required.

## <u>LOCAL RULE 7.1(F) CERTIFICATION</u>

Pursuant to Local Rule 7.1(F), the undersigned hereby certifies that this memorandum contains 3,087 words.

/s Jeff Berhold
Jeffrey L. Berhold*
Georgia Bar No. 054682
JEFFREY L. BERHOLD, P.C.
1230 Peachtree Street, Suite 1050
Atlanta, GA 30309
(404) 872-3800
jeff@berhold.com

**COUNSEL FOR PLAINTIFF**

* Admitted Pro Hac Vice

15

## <u>LOCAL RULE 7.1(C) CERTIFICATE</u>

Pursuant to Local Rule 7.1(C), Restore hereby confirms that it complied with the attorney-conference requirement of Local Rule 7.1(B) and that Intuitive informed Restore that it opposed the motion.

_____s/ Jeff Berhold_____
Jeffrey L. Berhold
**COUNSEL FOR PLAINTIFF**